IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GWEN REED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:12-CV-331-APR |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration[1], ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

This matter is before the petition for judicial review of the decision of the Commissioner of Social Security filed by the plaintiff, Gwen Reed, on August 15, 2012. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED.**

Background

The plaintiff, Gwen Reed, filed an application for Disability Insurance Benefits on July 22, 2009. (Tr. 17) Her claim initially was denied on October 7, 2009, and again upon reconsideration on February 2, 2010. (Tr. 17) Reed appeared and testified at a hearing held on October 14, 2010 before Administrative Law Judge ("ALJ") Denise McDuffie Martin. (Tr. 17) On March 21, 2011, the ALJ issued a decision denying Reed's disability claim. (Tr. 17-25) Reed requested review by the Appeals Council, which was denied on April 30, 2012. (Tr. 1-7) Reed filed her petition for judicial review on August 15, 2012.

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is automatically substituted for Michael J. Astrue as the named Defendant.

1

At the hearing before the ALJ, Reed testified that she had an operation on her heart and had not gotten better since the operation. (Tr. 34) She became tired and out of breath from walking, and if she lifted a heavy object, she would get chest pains and need to lie down. (Tr. 34) When she felt stressed or nervous, her heart would start fluttering, and she had to sit or lie down. (Tr. 38) She took two naps for about 1-3 hours a day because she was tired. (Tr. 35) She had swelling in her foot and fingers. (Tr. 36) She stated that she needed to elevate her foot all the time due to the swelling. (Tr. 36) She became dizzy in the morning after taking her medications and had to lie down after taking them. (Tr. 42) Her medications also made her drowsy. (Tr. 44) She suffered from anemia, and she had to get blood transfusions because her blood level kept dropping. (Tr. 42-43) She could lift about 10 pounds. (Tr. 46) When she was in cardiac rehabilitation, they had her walking a half a mile, but she could go at her own pace and take breaks and rest. (Tr. 49, 53) She was unable to walk a block at the time of the hearing. (Tr. 54) She could not focus long and no longer read because she could not remember what she had read. (Tr. 53)

Reed was unable to do much housework, and her husband helped with some of it. (Tr. 35) She got tired trying to do a little cleaning around the house and was not able to wash the dishes without becoming short of breath and tired. (Tr. 34) She lost her breath going to the grocery store and to the doctor. (Tr. 40) Her doctor restricted her from driving, and her husband drove her places. (Tr. 40)

Vocational Expert Gail Franklin also testified at the hearing. The ALJ asked a hypothetical question of the vocational expert which included a person of the claimant's age, education, and past work experience who could perform light work with no climbing of ladders,

ropes, or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; avoiding unprotected heights and dangerous or moving machinery; and was limited to unskilled low stress work. The vocational expert indicated that jobs were availabe. (Tr. 55) The ALJ then asked a second hypothetical question with the same limitations as in the first, but with a limitation to sedentary work. The vocational expert replied that such a person could perform work as a paramutual ticket taker (1,341 jobs) and lens inserter (991 jobs). (Tr. 56) However, if the hypothetical person had to elevate her foot to footstool height, that would preclude all jobs. (Tr. 56) If the person were off task 20% of the workday, missed more than two days of work per month, or nodded off to sleep during the workday, she also would not be able to maintain the jobs cited. (Tr. 57)

The ALJ issued her decision denying benefits on March 21, 2011. At step one of the five step sequential analysis used to determine whether an individual is disabled, the ALJ determined that Reed had not engaged in substantial gainful activity since June 27, 2009, her alleged onset date. (Tr. 19) At step two, the ALJ found that Reed had the following severe impairments: congestive heart failure; obesity; hypertension; coronary artery disease; and status-post open heart surgery and valvular repair. (Tr. 19) The ALJ explained that based on Reed's weight and height, her BMI was 36.6, and was considered at Level II obesity. (Tr. 19) Because Reed also testified regarding physical limitations that could be attributable in part to her obesity, the ALJ considered obesity to be a severe impairment and restricted her to light work with numerous postural limitations as a result. (Tr. 20)

The ALJ next determined that Reed's condition did not meet or medically equal a listed impairment. (Tr. 20)

3

Considering "all symptoms and the extent to which [those] symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence", the ALJ found that Reed had the residual functional capacity to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except she should never climb ladders, ropes or scaffolds. She should only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. She should avoid all exposure to heights and moving machinery. The claimant has the mental residual functional capacity to understand, remember, and carry out unskilled, low stress tasks. (Tr. 21)

In reaching this determination, the ALJ first summarized Reed's testimony. (Tr. 22) Reed complained that she always was tired, out of breath if she walked, and had chest pains if she lifted objects. (Tr. 22) She could not lift more than 10 pounds. (Tr. 22) She had to move to a first floor apartment because she could not walk up and down stairs well. (Tr. 22) She experienced swelling in her feet and fingers, and she had to elevate her feet at all times.[2] (Tr. 22) She had pain in her lower back and chest that was a 10/10 until she took her medication. (Tr. 22) Reed complained that her medication made her drowsy. (Tr. 22) She could not stand for longer than two hours, and during rehabilitation, she was able to walk for half a mile. (Tr. 22) After summarizing this testimony, the ALJ stated that she did not find Reed's statements credible to the extent they conflicted with the RFC she assessed. (Tr. 22)

The ALJ next summarized the medical evidence pertaining to Reed's heart condition and hypertension. (Tr. 22) The ALJ noted that Reed's echocardiogram results from February 2008 showed an ejection fraction at 55% and insignificant pericardial effusion. (Tr. 22) Reed's

---

[2] At the hearing, Reed stated that her foot swelled and required elevation. However, in her opinion, the ALJ stated that Reed complained about swelling in both feet that required elevation.

4

physical exam results were normal at her September 2009 consultative exam, and Dr. J. Smejkal's impression was history of congestive heart failure and uncontrolled hypertension. (Tr. 22) In November 2009, Reed's treating physician, Dr. Adolphus Anekwe, noted that Reed was experiencing atypical chest pain and recommended that she see a cardiologist. (Tr. 22) Reed had a stress test that suggested ischemia and showed normal myocardial perfusion. (Tr. 22) Subsequent stress tests revealed no evidence of myocardial ischemia or infarction, and her chest x-rays revealed mild cardiomegaly with mild congestive heart failure. (Tr. 22)

Reed underwent aortic valve replacement surgery with mitral valve repair in February 2010, after presenting with symptoms of congestive heart failure. (Tr. 22) Follow up records from April 2010 indicated that Reed was doing well and that her incision had healed. (Tr. 22) In May 2010, Reed was asymptomatic with the exception of chest discomfort due to recent surgery. (Tr. 22) Her ejection fraction was estimated at 52%, she exercised for 4:16 minutes on a treadmill, and her doctor's impression was normal myocardial perfusion with good exercise capacity and no evidence of myocardial ischemia or infraction. (Tr. 22) By July 2010, Reed was asymptomatic and no longer complained of chest discomfort. (Tr. 22) The ALJ concluded that after considering Reed's heart conditions, hypertension, and obesity, Reed had the RFC to do sedentary work with some postural and environmental limitations. (Tr. 22)

In a separate paragraph, the ALJ further explained her credibility finding. (Tr. 23) She noted that Reed underwent surgery for her conditions, which suggested that her symptoms were genuine. However, the record and Reed's testimony regarding her success with physical rehabilitation reflected that surgery was successful in relieving her symptoms. (Tr. 23) Although Reed reported various side effects from her prescribed medications, the medical records did not

5

corroborate those findings. (Tr. 23)

The ALJ went on to explain that she was not persuaded by Reed's attorney's argument regarding the severity of Reed's heart condition. (Tr. 23) Although he correctly pointed out that Reed's condition was considered level II to IV in February 2010 because she had shortness of breath, orthopnea, paroxysmal nocturnal dyspnea, and ankle swelling, she subsequently underwent successful aortic valve replacement with mitral valve repair, and her follow-up records revealed that she recovered well and was asymptomatic. (Tr. 23)

The ALJ also considered the opinion prepared by the state agency physician, Dr. R. Bond, whose opinion was affirmed by Dr. J. Sands. (Tr. 23) Dr. Bond determined that Reed could lift or carry 50 pounds occasionally, lift or carry 25 pounds frequently, stand or walk for 6 hours in an 8 hour work day, and sit or walk for six hours in an 8 hour workday, with no postural limitations. (Tr. 23) The ALJ gave some weight to Dr. Bond's opinion because it was consistent with the medical evidence of record at the time it was given. (Tr. 23) However, based on subsequent medical evidence, including documentation regarding Reed's February 2010 surgery, and after listening to Reed's testimony at the hearing, the ALJ found it appropriate to limit Reed to unskilled, sedentary work with postural and environmental limitations. (Tr. 23)

The ALJ also considered the opinion prepared by Reed's treating physician, Dr. Anekwe, which stated that Reed could not perform light work. (Tr. 23) This opinion was prepared the same month as Reed's surgery and prior to the start of physical therapy or rehabilitation. (Tr. 23) His opinion did not state whether this inability was permanent or temporary. (Tr. 23) Because the ALJ was unsure whether Dr. Andkew was familiar with the definition of disability within the Social Security Act and regulations, she did not give his opinion great weight. (Tr.

6

23) Regardless, she noted that her RFC finding did not conflict with his opinion. (Tr. 23)

The ALJ also considered the medical source statement prepared by Dr. Ray Sawaqed. (Tr. 23) The ALJ did not give this opinion great weight because he wrote "N/A" next to questions regarding specific limitations, and it was unclear whether that was intended to indicate that Reed was disabled or not disabled. (Tr. 23) Additionally, the opinion was not signed. (Tr. 24)

At step four, the ALJ determined that Reed could not perform her past relevant work as a housekeeper. (Tr. 24) At step five, considering Reed's age, education, work experience, and RFC, the ALJ determined that there were a significant number of jobs in the national economy that Reed could perform, including paramutual ticket checker (1,341 jobs regionally) and lens inserter (991 jobs regionally). (Tr. 24-25)

Discussion

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Kastner v. Astrue***, 697 F.3d 642, 646 (7th Cir. 2012); ***Schmidt v. Barnhart***, 395 F.3d 737, 744 (7th Cir. 2005); ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 852, (1972)(*quoting* **Consolidated Edison Company v. NRLB**, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L.Ed.2d 140 (1938)); *See also* **Shideler v. Astrue,** 688 F.3d 306, 310 (7th Cir.

2012); ***Jens v. Barnhart***, 347 F.3d 209, 212 (7th Cir. 2003); ***Sims v. Barnhart***, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. ***Roddy v. Astrue,*** 705 F.3d 631, 636 (7th Cir. 2013); ***Rice v. Barnhart***, 384 F.3d 363, 368-369 (7th Cir. 2004); ***Scott v. Barnhart***, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez***, 336 F.3d at 539.

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
>
> **42 U.S.C. § 423(d)(1)(A)**.

The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520.** The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. § 404.1520(b).** If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c).** Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the

8

claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" (RFC) and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e).** However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).**

Reed first challenges the ALJ's credibility determination. This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported ... can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles her opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997); *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ must determine a claimant's credibility only after considering all of the

9

claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." **20 C.F.R. §404.1529(a);** *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir.2007)("subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. §404.1529( c);** *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005)("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.")

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective medical evidence." SSR 96-7p, at *1. *See also* ***Indoranto v. Barnhart***, 374 F.3d 470, 474 (7th Cir. 2004); ***Carradine v. Barnhart***, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits."). Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing

10

> specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted).

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994); *see also* ***Zurawski v. Halter***, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, he must make more than "a single, conclusory statement . . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *2. *See* ***Zurawski***, 245 F.3d at 887; ***Diaz v. Chater***, 55 F.3d 300, 307-08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the evidence). She must "build an accurate and logical bridge from the evidence to [his] conclusion." ***Zurawski***, 245 F.3d at 887 (*quoting* ***Clifford v. Apfel***, 227 F.3d 863, 872 (7th Cir. 2000)). When the evidence conflicts regarding the extent of the claimant's limitations, the ALJ may not simply rely on a physician's statement that a claimant may return to work without examining the evidence the ALJ is rejecting. *See* ***Zurawski***, 245 F.3d at 888 (*quoting* ***Bauzo v. Bowen***, 803 F.2d 917, 923 (7th Cir. 1986)) ("Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be *examined*, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight.") (emphasis in original).

Reed raises several challenges to the ALJ's credibility determination. First, she

complains that the ALJ used improper boilerplate language and determined her RFC prior to assessing her credibility. This type of boilerplate language almost always is used in Social Security opinions. Although the Seventh Circuit has criticized the use of such boilerplates, their use is not reversible error if the ALJ further supports her decision with the record. *Yost v. Astrue*, 342 Wis.2d 576, 819 N.W.2d 240, 2012 WL 2814347 (N.D.Ill. July 10, 2010) (citing *Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011)). Here, the ALJ also relied on the medical notes prepared following Reed's surgery, which state that she was asymptomatic, and the medical opinions prepared by Reed's treating and the consultative physicians of record. Although Reed challenges the ALJ's reliance on some of this evidence, these challenges will be addressed in turn.

Reed first complains that the ALJ did not explain which parts of her testimony she found credible and which part she found to be not credible. Specifically, she refers to her testimony concerning her need to elevate her legs at all times and frequent fatigue. Reed is mistaken. The ALJ explained the parts of Reed's testimony that were inconsistent with the RFC, and this would encompass her testimony concerning both of these complaints. The ALJ found that Reed was not credible because after her surgery her physical rehabilitation was successful in relieving the symptoms. Reed's follow-up appointments revealed that she recovered well and was asymptomatic.

In her argument, Reed was able to point to only one medical note, a May 2010 treadmill test, where it was recorded that her exercise tolerance was limited by dyspnea and fatigue. However, this test was performed shortly after her surgery, and subsequent doctor's visits revealed that she was asymptomatic, as the ALJ explained. Reed also pointed to numerous

medical notes documenting her swollen feet to show that she needed to elevate them. All of the notes to which she pointed were recorded prior to her February 2010 surgery. Again, her subsequent visits revealed that she no longer suffered from these ailments. It is not the court's job to re-weigh the evidence to determine whether the ALJ made the correct determination. Rather, the court must consider whether the ALJ supported her opinion, and here the court finds that the ALJ sufficiently explained that although Reed may have suffered from these ailments at this time, the medical notes following her surgery were more telling of her current problems and abilities. Because the recent medical notes revealed that surgery was successful and that Reed was asymptomatic, the ALJ did not error in rejecting this testimony and substantiated her opinion with sufficient evidence.

Reed also complains that the ALJ did not consider the side effects produced by her medications. However, the ALJ has no duty to make specific findings about the effects of a claimant's medications. *See **Misener v. Astrue***, —— F.Supp.2d ——, 2013 WL 633287, *14 (N.D. Ind. 2013) (citing ***Labonne v. Astrue***, 341 Fed. Appx. 220, 226 (7th Cir. 2009)). If the ALJ chooses to make a finding concerning the claimant's side effects, then it must be supported by substantial evidence. ***Misener***, 2013 WL 633287 at *14. Here, the ALJ did not make a specific finding concerning Reed's side effects, nor was she required to. Even so, the evidence concerning Reed's side effects was so scant that it would be futile to remand for consideration on this issue. As the ALJ explained, there was no medical evidence that recorded any side effects.

Reed next argues that the ALJ's RFC determination was insufficient as a matter of law. She first criticizes the ALJ's opinion because it was not based on a specific medical opinion and argues that the ALJ impermissibly created the RFC by finding a middle ground. The Seventh

Circuit never has held that the ALJ must adopt the medical findings of one physician. Even so, it is important to note that none of the physicians of record, treating or consultative, gave a more restrictive residual functional capacity than that provided by the ALJ. It logically follows that if Reed could perform the more involved tasks set forth in the doctors' opinions, she also could perform the easier tasks set forth in the RFC determined by the ALJ. This is not an instance where the ALJ has rejected the relevant medical opinions and independently created her own RFC, as occurred in the cases on which Reed relies. *See* **Suide v. Astrue**, 371 Fed. Appx. 684, 690 (7th Cir. 2010); **Bailey v. Barnhart**, 473 F.Supp.2d 822, 839 (N.D. Ill. 2006). Rather, the ALJ accepted the medical opinions and found that Reed had an RFC that did not contradict even one of those opinions. Reed's argument is counterintuitive. If the court remanded because the ALJ's opinion was not based on a specific medical opinion, remand only would result in a greater RFC consistent with those opinions.

Reed also complains that the ALJ failed to explain how she arrived at her RFC assessment. The court disagrees. The ALJ provided a thorough explanation of the medical evidence and RFC opinions created by the physicians. By her summary, it is clear that she took into consideration all of Reed's treatment as well as the medical opinions provided by the consultative physicians. She further explained that she gave some weight to Dr. Bond's opinion, but that the subsequent medical evidence, including Reed's surgery and her testimony, led her to finding that Reed had a more restrictive RFC. The ALJ also explained that she gave little weight to Dr. Anekwe's opinion because it did not indicate whether Reed's inability to perform light work was permanent or temporary, and she was not sure whether Dr. Anekwe understood the definition of disability as defined the Social Security Act and regulations. Regardless, the ALJ

14

acknowledged that her RFC assessment did not conflict with Dr. Anekwe's opinion. Together, the medical opinions suggested that Reed was at least capable of performing light work. However, the ALJ acknowledged that she was being generous by limiting Reed to sedentary work with certain restrictions and did so based on Reed's testimony and the effects of her obesity.

Reed makes one final challenge to the ALJ's RFC determination, arguing that the ALJ failed to consider her obesity in combination with her other impairments. If a claimant is obese, the ALJ must specifically address the "incremental effect" of obesity on the claimant's limitations. *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). Even if a claimant does not contend that obesity is one of her impairments, SSR 02-1p requires an ALJ to consider the effects of obesity on the claimant's other conditions. However, failure to consider explicitly these effects can be "harmless error." *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). Since the ALJ in *Prochaska* "sufficiently analyzed" the claimant's obesity (by implicitly considering the issue, in part by relying on medical documents that noted the claimant's height and weight), and because the claimant did not specify how obesity specifically impaired her work ability, the Seventh Circuit found that any error on the ALJ's part in not explicitly considering the claimant's obesity was harmless. *Prochaska v. Barnhart*, 454 F.3d at 737. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)(ALJ's adoption of limitations suggested by doctors who were aware of claimant's obesity, plus claimant's failure in specifying how weight impaired the ability to work, was harmless error).

Here, the ALJ did more than implicitly consider the effects of Reed's obesity in combination with her other impairments. The ALJ assessed that Reed's obesity was considered

15

to be at Level II. She also noted that Reed testified to physical limitations which could be attributed to her obesity. For this reason, the ALJ limited Reed to light work with postural limitations. Later, after considering Reed's heart problems, the ALJ determined that the combination of Reed's heart problems and obesity required limiting Reed to sedentary work with postural and environmental limitations. From these passages, it is clear that the ALJ considered the effect Reed's obesity had on her abilities and provided Reed greater restrictions as a result. It was Reed's obesity, in addition to her testimony and the additional medical records submitted since Dr. Bond rendered his opinion, that led the ALJ to find that Reed had a more restricted RFC than the doctors otherwise opined. Because the ALJ explained this throughout her decision, the court finds that her RFC determination was substantially supported and explained.

If nothing else, the ALJ's errors are harmless. Reed has not pointed to any medical evidence that would demand greater restrictions than those determined by the ALJ. *See* ***Keys v. Barnhart***, 347 F.3d 990, 994-95 (7th Cir. 2003) (explaining that where it is clear that the ALJ's decision would not be overturned by remanding the issue for further consideration, the doctrine of harmless error applies to prevent remand). It would be futile to remand a case where, as here, the evidence unequivocally shows that the claimant had the ability to perform at least light work.

For these reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 28th day of August, 2013

/s/ Andrew P. Rodovich
United States Magistrate Judge